## DEER HILL ARMS II LIMITED PARTNERSHIP *v.* PLANNING COMMISSION OF THE CITY OF DANBURY (15448)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued October 1—officially released December 31, 1996

*James Mulvey*, for the appellant (plaintiff).

*Daniel E. Casagrande*, for the appellee (defendant).

BERDON, J. The broad issue in this appeal is whether a condition imposed by the defendant planning commission of the city of Danbury that restricts occupancy of units in one of two condominium buildings on a single tract of land to persons fifty-five years of age or older without children violates the prohibition of discrimination based on familial status under the federal Fair Housing Act (act), 42 U.S.C. § 3601 et seq., and is therefore void. For the purposes of this case, this issue is resolved by determining whether the condition qualifies under the act's "housing for older persons" exemption. 42 U.S.C. § 3607 (b) (2) (C) (1994).[1]

The plaintiff, Deer Hill Arms II Limited Partnership, brought this action against the defendant, the Danbury

[1] Title 42 of the United States Code, § 3607 (b) (1994), provides: "(1) Nothing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling. Nor does any provision in this title regarding familial status apply with respect to housing for older persons.

"(2) As used in this section, 'housing for older persons' means housing—

"(A) provided under any State or Federal program that the Secretary determines is specifically designed and operated to assist elderly persons (as defined in the State or Federal program); or

planning commission,[2] for a declaratory judgment seeking to declare invalid a condition of the special exception imposed by the defendant that the occupancy of one of two buildings (Deer Hill Arms II) at the Deer Hill Arms Condominium complex be restricted to persons fifty-five years of age or older without children. The plaintiff asserted that the condition violates the prohibition of discrimination against families with children under the act. The trial court held that Deer Hill Arms II was exempt from the requirements of the act because it qualifies for the "housing for older persons" exemp-

"(B) intended for, and solely occupied by, persons 62 years of age or older; or

"(C) intended and operated for occupancy by at least one person 55 years of age or older per unit. In determining whether housing qualifies as housing for older persons under this subsection, the Secretary shall develop regulations which require at least the following factors:

"(i) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and

"(ii) that at least 80 percent of the units are occupied by at least one person 55 years of age or older per unit; and

"(iii) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older.

"(3) Housing shall not fail to meet the requirements for housing for older persons by reason of:

"(A) persons residing in such housing as of September 13, 1988, who do not meet the age requirements of subsections (2) (B) or (C): Provided, That new occupants of such housing meet the age requirements of subsections (2) (B) or (C); or

"(B) unoccupied units: Provided, That such units are reserved for occupancy by persons who meet the age requirements of subsections (2) (B) or (C).

"(4) Nothing in this subchapter prohibits conduct against a person because such person has been convicted by any court of competent jurisdiction of the illegal manufacture or distribution of a controlled substance as defined in [the Controlled Substances Act, 21 U.S.C. § 802]."

[2] The trial court granted a motion to be cited in as a defendant filed by Sylvia Browd, an eighty-three year old owner of one of the living units in the condominium building that is the subject of this litigation. For the purposes of this opinion, all references to the defendant refer solely to the planning commission of the city of Danbury.

tion provided by the act.[3] The plaintiff appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following facts are not disputed. The real property that is the subject of this litigation is located in Danbury and consists of approximately 2.1 acres (site). In 1973, the defendant granted a special exception and site plan approval for the construction on the site of an unrestricted building consisting of twenty-eight dwelling units (Deer Hill Arms I) and a second building, consisting of thirty-two dwelling units, which was restricted to residents fifty-five years of age or older without children, Deer Hill Arms II,[4] pursuant to § 4.3.4 of the zoning regulations of the city of Danbury.[5] The legal title to the site was transferred to Deer Hill Arms

[3] The trial court also based its decision on the assumption that Deer Hill Arms II is exempt from the prohibition of discrimination based on the familial status provision of the 1988 amendment to the act because these provisions are not retroactive. We agree with the plaintiff, and the defendant on appeal also agrees, that whether the amendment to the act is retroactive is not relevant to our inquiry. The act "and the rules promulgated thereunder set rules for *future* use and transfer and interfere with the expectations of past purchasers only regarding the future use of their property by themselves and by others." (Emphasis in original.) *Seniors Civil Liberties Assn., Inc.* v. *Kemp*, 761 F. Sup. 1528, 1558 (M.D. Fla. 1991), aff'd, 965 F.2d 1030 (11th Cir. 1992).

[4] The specific number of units initially authorized and subsequently constructed in Deer Hill Arms I and II varied with the permission of the defendant. Because these changes do not materially affect the issue in this case, we refer only to the exact number of units constructed in both Deer Hill Arms I and II.

[5] In 1973, § 4.3.4 of the zoning regulations of the city of Danbury provided in pertinent part: "In the case of Garden Apartments, Garden Apartment efficiency units, Apartment Houses and Apartment House efficiency units which are constructed and/or operated by a private profit-making organization *solely for occupancy by elderly persons aged 55 and above, without children,* the Planning Commission may by the granting of a special exception reduce the required Minimum Lot Area per dwelling to a minimum of 600 sq. ft. . . . ." (Emphasis added.)

Condominium (condominium). After completion of Deer Hill Arms I, title to the unsold units passed to the Danbury Savings and Loan Association (Danbury Savings). Because the construction did not commence on Deer Hill Arms II, the special exception for those units expired in 1976. In 1982, the defendant approved the application of Danbury Savings for a special exception and site plan in order to construct Deer Hill Arms II on the site as an elderly housing facility pursuant to § 4.C.4 of the 1981 zoning regulations of the city of Danbury. Section 4.C.4 is identical in all pertinent respects to the 1973 regulation, § 4.3.4, in that it restricted housing to "persons fifty-five (55) and above, without children."[6] In granting the special exception for Deer Hill Arms II, the defendant considered that both Deer Hill Arms I and II were to be located on the site under the ownership of the condominium.[7] The plaintiff took title to Deer Hill Arms II in 1987 and, in 1989, constructed those units authorized by the 1982 special exception granted by the defendant to Danbury Savings.

In 1990, the plaintiff informed the defendant that, in its opinion, the requirement that Deer Hill Arms II be

[6] Section 4.C.4 of the 1981 zoning regulations of the city of Danbury provided in pertinent part: "In the case of garden apartments, garden apartment efficiency units, apartment houses and apartment house efficiency units, which are constructed and/or operated by a private profit-making organization, *solely for occupancy by elderly persons fifty-five (55) and above, without children,* the planning commission may by the granting of a special exception reduce the required minimum lot area per dwelling to a minimum of six hundred (600) sq. ft. . . . ." (Emphasis added.)

[7] Certain unit owners in Deer Hill Arms I appealed from the granting of the 1982 special exception to the Superior Court, alleging inadequate parking and insufficient open space. Specifically, the issue in the administrative appeal was whether the land upon which Deer Hill Arms II was to be constructed would be considered as a separate parcel from that of Deer Hill Arms I, and therefore did not meet the requirements for parking and open space. *Val v. Planning Commission,* Superior Court, judicial district of Danbury, Docket No. 280454 (January 6, 1984). The trial court dismissed that appeal, finding that the site was to be considered as one parcel for zoning purposes and, therefore, the parking and open space requirements for Deer Hill Arms II were satisfied. Id.

occupied only by persons fifty-five years of age or older without children violated the act, thereby rendering the condition null and void. The plaintiff also advised the defendant that it intended to sell units in Deer Hill Arms II without regard to the condition of the special permit. Thereafter, the plaintiff brought this action for a declaratory judgment.

Enacted by Congress as Title VIII of the Civil Rights Act of 1968, the act was designed to establish a national policy against discrimination in housing based upon race, color, religion, or national origin. See Civil Rights Act of 1968, Pub. L. No. 90-284, tit. VIII, §§ 801–819, 82 Stat. 81 (codified as amended at 42 U.S.C. § 3601 et seq.); *Elliott* v. *Athens*, 960 F.2d 975, 978 (11th Cir.), cert. denied, 506 U.S. 940, 113 S. Ct. 376, 121 L. Ed. 2d 287 (1992). Subsequently, Congress amended the act in 1974 to prohibit discrimination based upon sex. See Housing and Community Development Act of 1974, Pub. L. No. 93-383, tit. VIII, § 808 (b), 88 Stat. 633 (codified at 42 U.S.C. § 3604 [a]). Effective March 2, 1989, Congress extended coverage of the act to prohibit discrimination based upon "familial status." See Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, § 5, 102 Stat. 1619 (codified at 42 U.S.C. § 3602 [k]). Section 3602 (k) (1) of the act defines familial status as one or more individuals, who have not attained the age of eighteen, being domiciled with a parent or other person having legal custody of such minor.[8] If there were nothing

[8] Title 42 of the United States Code, § 3602 (k), provides: " 'Familial status' means one or more individuals (who have not attained the age of 18 years) being domiciled with—

"(1) a parent or another person having legal custody of such individual or individuals; or

"(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

"The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years."

more, the condition of the special exception for Deer Hill Arms II would be void as violating provisions of the act prohibiting discrimination based upon familial status. See *Edmonds* v. *Oxford House, Inc.*, 514 U.S. 725, 731, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995) (acknowledging act's stated policy " 'to provide, within constitutional limitations, for fair housing throughout the United States' "); *Trafficante* v. *Metropolitan Life Ins. Co.*, 409 U.S. 205, 211–12, 93 S. Ct. 364, 34 L. Ed. 2d 415 (1972) (holding that act should be afforded "generous construction" in order to carry out " 'policy that Congress considered to be of the highest priority' ").

Nevertheless, as the defendant argues and as the trial court concluded, Deer Hill Arms II falls within an exception to the act. Title 42 of the United States Code, § 3607 (b) excepts "housing for older persons" from the prohibition against discrimination based upon familial status. Housing for older persons is specifically defined to include housing: "(C) intended and operated for occupancy by at least one person 55 years of age or older per unit. In determining whether housing qualifies as housing for older persons under this subsection, the Secretary shall develop regulations which require at least the following factors: (i) the existence of significant facilities and services specifically designed to meet the physical or social needs of older persons, or if the provision of such facilities and services is not practicable, that such housing is necessary to provide important housing opportunities for older persons; and (ii) that at least 80 percent of the units are occupied by at least one person 55 years of age or older per unit; and (iii) the publication of, and adherence to, policies and procedures which demonstrate an intent by the owner or manager to provide housing for persons 55 years of age or older." 42 U.S.C. § 3607 (b) (2) (C) (1994).[9]

---

[9] See footnote 1.

Although the trial court addressed the significant facilities and services[10] and the publication and adherence prongs of 42 U.S.C. § 3607 (b) (2) (c), the parties agree that the only relevant issue that they addressed before the trial court was whether at least 80 percent of the units are intended to be occupied by at least one person fifty-five years of age or older per unit. The answer to this part of the three part test set forth in § 3607 (b) (2) (C) is determinative of the issue in this case.[11]

---

[10] We note that effective December 28, 1995, Congress enacted the Housing for Older Persons Act of 1995, Pub. L. No. 104-76, 109 Stat. 787, which amended 42 U.S.C. § 3607 (b) (2) by eliminating the "significant facilities and services" requirements for housing for older persons. Title 42 of the United States Code, § 3607 (b) (2) (C), now provides that housing for older persons means housing: "intended and operated for occupancy by persons 55 years of age or older, and—

"(i) at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;

"(ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and

"(iii) the housing facility or community complies with rules issued by the Secretary for verification of occupancy, which shall—

"(I) provide for verification by reliable surveys and affidavits; and

"(II) include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (ii). Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification."

[11] The parties disagree in this case about who had the burden of proving that Deer Hill Arms II falls within the housing for older persons exception of the act. Both parties agree that when a party claims that an exception to the act is applicable, that party generally bears the burden of proving the exception. See United States v. Columbus Country Club, 915 F.2d 877, 882 (3d Cir. 1990) ("[u]nder general principles of statutory construction, one who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception" [internal quotation marks omitted]).

In this case, however, the defendant argues that the plaintiff alleged in the complaint that Deer Hill Arms II does not qualify for the older persons exception of the act and, therefore, the condition requiring occupancy by persons fifty-five years of age or older without children is void as having been preempted by the act. The defendant argues that the burden of proof is therefore on the plaintiff to prove that the act preempted the condition

If Deer Hill Arms I and II are treated as a single entity for the purposes of determining the percentage of the units that are "intended to be operated" for persons fifty-five years of age and older, this part of the exception would not be satisfied. Only 51 percent of the units would be intended to be occupied by those persons if the thirty-two units in Deer Hill Arms II are compared to the total of sixty units in Deer Hill Arms I and II. If, however, Deer Hill Arms I and II are considered to be separate entities for the purposes of the act, then 100 percent of the units in Deer Hill Arms II would be intended to be occupied by persons fifty-five years of age and older and the exemption for older persons would apply in this case. The trial court concluded that Deer Hill Arms I and II were, in fact, separate entities for the purposes of the act. We agree.

We recognize that "[e]xemptions from the Fair Housing Act are to be construed narrowly, in recognition of the important goal of preventing housing discrimination." *Massaro* v. *Mainlands Section 1 & 2 Civic Assn., Inc.*, 3 F.3d 1472, 1475 (11th Cir. 1993), cert. denied, 513 U.S. 808, 115 S. Ct. 56, 130 L. Ed. 2d 15 (1994); see *Elliott* v. *Athens*, supra, 960 F.2d 979 (noting exemptions contained in act are to be construed narrowly). Nevertheless, the legislative history is replete with expressions of congressional concern on protecting choice of living in housing of older persons with respect to their age and interests.[12] Accordingly, a flexible fact

of the special exception, including the inapplicability of the exemption for older persons. Because we conclude that there was substantial evidence to support the trial court's finding that Deer Hill Arms I and II were separate communities for the purposes of the act and, therefore, that Deer Hill Arms II qualified for the exemption of housing for older persons, we need not decide the issue of the burden of proof in the context of this case.

[12] "In reading the applicable legislative history, this Court found a substantial amount of specific and persuasive testimony on this point. See, 134 Cong. Rec. H4605 (daily ed. June 22, 1988) (remarks of Rep. Fish) ('Finally, the bill contains language aimed at protecting senior citizens retirement communities—those that are intended for and principally occupied by the

specific inquiry must be made to determine whether the exemption is applicable so that these legislative goals may be achieved. *Massaro* v. *Mainlands Section 1 & 2 Civic Assn., Inc.*, 796 F. Sup. 1499, 1501 (S.D. Fla. 1992), rev'd on other grounds, 3 F.3d 1472 (11th Cir. 1993), cert. denied, U.S. , 115 S. Ct. 56, 130 L. Ed. 2d 15 (1994); *Seniors Civil Liberties Assn., Inc.* v. *Kemp*, 761 F. Sup. 1528, 1553 (M.D. Fla. 1991), aff'd, 965 F.2d 1030 (11th Cir. 1992).

There is no dispute that the title to the land upon which Deer Hill Arms I and II were constructed—that is, the site—is in the name of "Deer Hill Arms Condominium." Other than the legal title to the land and a common driveway, Deer Hill Arms I and II are separate communities, controlled by, and operated as, separate entities. Deer Hill Arms I was constructed in 1976 and Deer Hill Arms II in 1989. Indeed, certain unit holders

elderly. The aim is not to disrupt the lives of senior citizens or the operation of legitimate retirement communities.'); id. at H4606–07 (remarks of Rep. Pepper) ('There are some who say that the rights of senior citizens to reside in an all senior community will be taken away if this bill is enacted. I am here today as a well-known advocate for senior citizens, to say unequivocally, that this will not happen. The [a]ct fully protects the rights of senior citizens who live in retirement communities, and would allow these communities to exclude families with children if they so chose.'); id. at H4608 (remarks of Rep. Edwards) ('We were careful in writing the bill to make clear exceptions for "housing for older persons"—senior citizens who live in retirement communities will not be forced to live with children.'); id. at H4680–81 (remarks of Rep. Synar) ('As a member of the Select Committee on Aging and one who is deeply involved and concerned about the issues facing our older citizens in this country, I have studied this issue at great length and . . . the committee went to great lengths to make exceptions which we believe take care of the situations which would affect our elderly.'); 134 Cong. Rec. S10469 (daily ed. August 1, 1988) (remarks of Sen. Kennedy) ('it was never intended to be a requirement that additional kinds of services would be necessary in order to enjoy the provisions and protections of the act'); id. at S10557 (remarks of Sen. Cranston) ('fair and balanced compromise that protects young families and senior citizens alike'); id. at S10558 (remarks of Sen. Metzenbaum) ('fine-tuning led to "flexibility" of exemptions.')." *Seniors Civil Liberties Assn., Inc.* v. *Kemp*, 761 F. Sup. 1528, 1553 (M.D. Fla. 1991), aff'd, 965 F.2d 1030 (11th Cir. 1992).

appealed from the 1982 decision of the defendant to grant Danbury Savings the special exception to construct Deer Hill Arms II.[13] The plaintiff was able to construct Deer Hill Arms II only by taking advantage of the special exception granted to Danbury Savings. The plaintiff marketed Deer Hill Arms II as a "unique innovation one-of-a-kind condominium catering to the discriminating buyer 55 years of age and older." More importantly, Deer Hill Arms II assesses its own unit owner common charges to maintain those units and has its own checking account from which the common expenses for Deer Hill Arms II for landscaping, garbage removal, utilities, common maintenance, snow removal and other such common charges are paid. Unit owners of Deer Hill Arms II do not contribute to the operating expenses of Deer Hill Arms I, nor do the unit owners of Deer Hill Arms II contribute to the expenses of Deer Hill Arms I. Occupants of Deer Hill Arms I do not have access to the common areas of Deer Hill Arms II, nor do the occupants of Deer Hill Arms II have access to those of Deer Hill Arms I. The plaintiff does not own or control any of the units in Deer Hill Arms I. No evidence was presented as to the entity that collects the common charges and pays the related expenses of Deer Hill Arms I. With respect to the condominium, there was no evidence that it functioned in any manner with respect to Deer Hill Arms I or II other than as the conduit for legal title to the land for both. In short, Deer Hill Arms I and II are separate and distinct communities for the purposes of the act.[14]

---

[13] See footnote 7.

[14] The plaintiff argues that the federal regulations specifically refer to this factual scenario and provide that Deer Hill Arms I and II are to be considered one entity for purposes of calculating the percentage in order to determine if 80 percent of the units are intended for persons fifty-five years of age or older. Title 24 of the Code of Federal Regulations, § 100.70 (c), provides in relevant part: "Prohibited actions . . . which are generally referred to as unlawful steering practices, include, but are not limited to . . . (4) Assigning any person to a particular section of a community, neighborhood or develop-

The trial court was correct in concluding that Deer Hill Arms II is a separate entity and, therefore, that 100 percent of its units are intended for persons fifty-five years of age or older, satisfying that part of the housing for older persons exemption. "The conclusions reached by the trial court must stand unless they are legally and logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law." (Internal quotation marks omitted.) *Newbury Common Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 100, 626 A.2d 1292 (1993).

In reaching our conclusion in this case, we emphasize that a fact specific inquiry governs our analysis. We recognize that a different result would have been reached had the original developer established two separate buildings, one with occupancy restricted to persons fifty-five years of age or older and the other without restriction, but with a common condominium association acting as the sole decision maker.[15] We emphasize that our decision today in no way authorizes developers to establish occupancy restrictions in different buildings in one housing community in an attempt to thwart the purposes of the act.

The judgment is affirmed.

In this opinion the other justices concurred.

---

ment, or to a particular floor of a building, because of race, color, religion, sex, handicap, familial status, or national origin." The regulation, however, is applicable to situations in which there is one community, and has no application to separate entities such as Deer Hill Arms I and II. Indeed, this would be an entirely different case if residents were, in fact, assigned or steered to one of the two buildings based on their familial status. Here, however, neither Deer Hill Arms I nor Deer Hill Arms II is controlled by a single authority and, therefore, there is no centralized decision maker assigning residents to certain units.

[15] See footnote 14.