[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed this summary process action seeking possession of the property known as 61-63 Clark Hill Road, East Hampton, CT., for the reason that the lease between the parties terminated by lapse of time. The defendants admit that the signed lease terminated by lapse of time, however, allege that there is a subsequent oral lease in effect. Moreover, the defendants assert that the plaintiff is estopped from prosecuting this action due to inequitable conduct by him or his agent.
Facts
On January 5, 1998, the plaintiff and the defendant, Joseph Blanco, entered into a written agreement for rental of 61-63 Clark Hill Road, East Hampton, CT. The lease specifically provided, inter alia, that the term would end on January 1, 2000.
The defendants rented this property with the knowledge that is was on the market for sale. Mr. Blanco testified that it was his understanding from Mr. Proto and the real estate agent that the duplex would be shown to "investors only," thereby protecting the defendants' tenancy.
The lease itself, which was marked into evidence, addresses this issue as follows:
 15. Sale of Property. We will continue to show prospective buyers, investors with no intent to occupy during the lease period. We will give you twenty-four hours notice of a showing. If the property is sold and the buyer wants occupancy, we will give you sixty days written notice to terminate your lease. If we sell the property to CT Page 13468-ek an investor we shall have no further liability to you under this lease . . .
There was also a hold-over provision in the lease which provided that if the defendants continued to occupy the house with consent after the expiration of the lease, tenancy would be on a monthly basis; the parties would be required to give sixty days notice to cancel the lease; and the other terms of the lease would still apply. Paragraph 24 of the lease allowed the defendant to cancel the lease with 60 days notice due to military transfer.
In late 1999, when the termination of the lease approached, the plaintiff contacted Mr. Blanco concerning the renewal of the lease. It was his understanding that the defendants wanted to renew for a period of one and a half to two years. He asked the real estate agent to draft the lease and forward it to Mr. Blanco.[1] The defendant never responded to this draft, so Mr. Proto left Mr. Blanco a message in March inquiring as to the status of the lease. He had no further communication with Mr. Blanco concerning the lease until August 21, 2000, when Mr. Blanco sent him a letter with a copy of the original signed lease containing handwritten changes the defendant wanted incorporated into the document. Included in the changes was a provision that the term of tenancy would be until January, 2003. When the plaintiff received this copy, he called Mr. Blanco and left a lengthy phone message regarding the changes in the lease. This message was transcribed by the defendant and entered into evidence, without objection.
In this message Mr. Proto states, inter alia. "Well we're going to make the lease a year to year so ah [sic] we modified the lease even though we're already three quarters into the lease from January, 2000 ah [sic] to January, 2001 and in 2001 we'll make another lease hopefully identical to this one from 2001 to 2002 . . ." The plaintiff received no response from the defendants to this message. In December, 2000, he received an offer to purchase the property. Prior to accepting, Mr. Proto called Mr. Blanco to advise him of the potential sale and to give him the right of first refusal, which the defendant did not exercise. On December 21, 2000, the plaintiff sent the defendants a letter notifying them that the monthly hold-over lease would expire in ninety days and not be renewed.
The property at 61-63 Clark Hill Rd., East Hampton, CT., is a duplex, particularly well suited to the defendants' needs. Mr. Blanco's mother resides in one side of the house and he, his wife and son in the other. He is a Colonel in the U.S. Army who received a "compassionate CT Page 13468-el reassignment" to Connecticut following medical and psychological problems his minor son experienced after the defendant's divorce and custody action. Mr. Blanco feels his son's difficulties were related to "instability" in the child's life, and he is committed to maintaining a stable environment for his son at this time. According to Mr. Blanco, when he rented the property at issue he wanted to insure that he and his family would not be uprooted until the time of his retirement in January, 2003, when he will be moving from the area. He testified that the plaintiff understood this as evidenced by a letter he received in April, 1999, from Mary Ann Olzacki, Mr. Proto's real estate agent, reiterating that the property would be listed for sale "to investors only."
Mr. Blanco acknowledged, however, that the army could transfer him at any time, which was the reason that the military provision was placed in the signed lease. The defendant also admitted that no written lease was signed after January, 2000. Based on conversations that he had with Mr. Proto, the defendant believed that his interests were protected so he did not expect a written lease. The defendant testified concerning instances in the fall of 2000, during which the house was shown to potential buyers who were interested in occupying the premises. While this caused his mother alarm. Mr. Blanco did not make any inquiry of Mr. Proto concerning it.
Discussion
The primary issue to be resolved is whether there is an oral lease in effect following the expiration of the parties' written agreement, which protects the defendants' occupancy of 61-63 Clark Hill Rd. While it is fundamental that an oral agreement may replace a prior written agreement, Baier v. Smith, 120 Conn. 568, 571, 181 A. 618 (1935), "mutual assent to its meanings and conditions is necessary." Hess v. Dumouchel,154 Conn. 343, 346, 225 A.2d 797 (1966). "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . . If the minds of the parties have not truly met, no enforceable contract exists." LR Realty v. ConnecticutNational Bank, 53 Conn. App. 524, 732 A.2d 181 (1999).
In this instance, there is evidence of conversations between the parties concerning terms of a new lease and two "draft" leases transmitted between the plaintiff and the defendants, however, the court does not CT Page 13468-em find evidence of a completed oral agreement. A fundamental provision, length of tenancy, was not agreed upon by the parties. Mr. Proto's transcribed phone message in early September, 2000, demonstrates that he did not agree to a lease which extended to January, 2003. The defendant acknowledged in his trial testimony that the plaintiff stated that he wanted the lease to go "year to year," and that he did not know the term of this alleged agreement. Moreover, the "draft" leases contain the defendant's handwritten changes and markings which further demonstrate disagreement. Because the parties were not in accord, an oral contract does not exist. The defendants held over on a monthly tenancy, which the plaintiff's ninety day notice effectively terminated.
The remaining issue is whether the plaintiff is estopped from asserting his right to possession because of his inequitable actions or those of "his agent," Mary Ann Olzacki. Mr. Blanco asserts that he relied on the statements of the plaintiff and Ms. Olzacki that the property would be shown to investors only. The signed lease does contain an "investors only" provision, however, it also states that in the event a buyer wants to occupy the premises, the defendants would receive sixty days notice to terminate the lease. While Mary Ann Olzacki sent Mr. Blanco a letter on April 3, 1999 stating "again I reiterate the property would be shown to [I]nvestor only buyers," this letter was sent during the tenancy of the signed agreement.
"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse." (Internal quotation marks omitted.) Rapin v. Nettleton, 50 Conn. App. 640, 649,718 A.2d 509 (1998). There are two essential elements a party must prove for a claim of equitable estoppel: "the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist" (Internal quotation marks omitted.) W. v. W., 248 Conn. 487, 496-497, 728 A.2d 1076
(1999).
The defendants claim that the plaintiff's assurances that the property was being shown to "investors only" led them to believe their occupancy of the premises was protected through January, 2003. The court finds that CT Page 13468-en there were no statements made by the plaintiff in this regard following the expiration of the original lease which could have reasonably induced Mr. Blanco to believe certain facts or to act on those facts. The term of the tenancy was a matter of dispute. Moreover, there is no evidence to suggest that the defendants changed their position to their detriment based on anything Mr. Proto or Ms. Olzacki said to them. At the time the defendants rented this property, they fully understood that it was for sale. They signed a lease which terminated in January, 2000, at which time Mr. Proto had the option of not renewing the lease. Knowing that their tenancy might be limited to a two year period, they rented the premises. When the lease expired, the defendants themselves failed to protect their tenancy. They neglected to secure a new lease, even when it became clear that potential buyers with a desire to occupy were viewing the home.
The court finds the defendant's argument that he didn't know he was on a month to month lease or that the property was being shown to buyers other than investors unpersuasive. "It is a fundamental rule as regards estoppel by conduct that the person claiming an estoppel must show that he exercised due diligence to know the truth; . . . and that he was destitute not only of knowledge of the true state of things, but also of any convenient or available means of acquiring such knowledge." Linahanv. Linahan, 131 Conn. 307, 327, 39 A.2d 895 (1944). The defendants were lax; they cannot now prevail on their claim that the plaintiff was misleading or unfair to them.
Mr. Proto cited many reasons why remaining in the home would be desirable to him and his family. The court finds these considerations more an issue of convenience, however, than of hardship since the defendant will be relocating his family when his tour of duty is completed in January, 2003.
For all the above reasons judgment may enter for the plaintiff.
CAROL A. WOLVEN JUDGE OF THE SUPERIOR COURT