ERIC FISCHER *v.* RICHARD ZOLLINO
(SC 18654)

Rogers, C. J., and Palmer, Zarella, McLachlan, Eveleigh, Harper and Vertefeuille, Js.

Argued October 25, 2011—officially released February 7, 2012

*Gerald S. Sack,* with whom, on the brief, was *Jonathan A. Eisner,* law student intern, for the appellant (plaintiff).

*Abram J. Heisler,* with whom, on the brief, was *Gabrielle A. Sheinfeld,* certified legal intern, for the appellee (defendant).

ROGERS, C. J. This case raises the question of whether the putative father of a child, upon learning that he was deceived by his wife, the child's mother, and the child's biological father as to the child's paternity, is estopped from recovering from the biological father funds that the putative father expended to raise the child while believing her to be his offspring. The plaintiff, Eric Fischer, appeals from the judgment of the trial court[1] rendered in favor of the defendant, Richard Zollino, after the trial court concluded that the doctrine of equitable estoppel and public policy concerns precluded the plaintiff from denying his financial responsibility for the child and pursuing his claims for reimbursement, which were based on theories of nondisclosure, misrepresentation and unjust enrichment. The plaintiff claims that the trial court improperly concluded that equitable estoppel barred this action and that, as a public policy matter, permitting him to recover damages from the defendant would be adverse to the child's best interests. We agree, and reverse the judgment of the trial court.

At trial, the plaintiff presented evidence to prove the following facts, and the defendant did not present evidence to the contrary.[2] The plaintiff and Pamela Tournier were married on April 26, 1986. Tournier gave birth

[1] The plaintiff appealed from the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Because the trial court found that the plaintiff was estopped from pursuing his claims, it did not make detailed factual findings relevant to those claims, aside from finding that the defendant is the biological father of the younger daughter. Accordingly, we recite the facts in terms of the evidence presented. See *State* v. *Rizzo*, 303 Conn. 71, 97–98 n.16, 31 A.3d 1094 (2011) (this court does not find facts). It appears from the record, however, that the relevant facts were largely undisputed. In particular, the parties did not dispute that Pamela Tournier and the defendant never told the plaintiff that it was possible that he was not the younger daughter's father.

to two daughters during the marriage, the elder daughter in 1986, and the younger daughter in 1992. Questions relating to the younger daughter's paternity gave rise to this litigation.

The plaintiff, Tournier and the defendant worked together in the late 1980s. In 1993, Tournier and the defendant started their own business. They remained business partners at the time of trial. Around the time Tournier's younger daughter was conceived, Tournier and the defendant had engaged in an extramarital affair. There is no evidence in the record that the plaintiff was aware of the affair, which ended in 1993.

The plaintiff testified that over time, he developed suspicions, based on a number of circumstances and occurrences, that the defendant was the father of the younger daughter. For example, when the younger daughter was born, the defendant accompanied Tournier and the plaintiff when they brought the younger daughter home from the hospital in a limousine. Additionally, the defendant attended many of the younger daughter's musical recitals and her eighth grade graduation, but did not attend activities of the elder daughter. The younger daughter, but not the elder daughter, also spent increasing amounts of time at Tournier's and the defendant's place of business. Finally, the younger daughter did not resemble the elder daughter or the plaintiff's daughter from a previous marriage.

In the spring of 2006, the plaintiff decided to investigate his suspicions. He surreptitiously obtained a hair sample from the younger daughter and mailed it to a laboratory, along with a sample from himself, for DNA analysis and comparison. In October, 2006, he received a report from the laboratory on the results of the testing, which had excluded the possibility that he was the younger daughter's father. The plaintiff thereafter con-

fronted Tournier and, in February, 2007, he moved out of the family residence and filed for divorce.

The plaintiff and Tournier were divorced on November 19, 2007. In their separation agreement, which was incorporated into the judgment of dissolution, only the elder daughter is listed as issue of the marriage, and an order of child support concerns only that daughter. During the dissolution proceedings, Tournier testified that she agreed to the agreement as fair and equitable, that she believed the defendant was the younger daughter's father and that he had provided the younger daughter with support since and would continue to do so. During the course of the proceedings in the present matter, the court ordered that the defendant submit a DNA sample to compare against the one the plaintiff had obtained from the younger daughter, and further testing confirmed that the defendant was her father.[3] When testifying in the present matter, the defendant conceded that, if the testing were accurate, he was the father of the younger daughter. At no time prior to the DNA testing did Tournier or the defendant disclose to the plaintiff that they had had an affair or that it was possible that the younger daughter was the product of that affair, although the defendant testified that he had suspected that he was her father.

In a complaint dated June 18, 2008, the plaintiff brought the present action against the defendant seeking damages on claims of nondisclosure, misrepresentation and unjust enrichment. Specifically, the plaintiff sought reimbursement from the defendant for the costs he had expended in raising the younger daughter from her birth until the dissolution of his marriage to Tournier, when the younger daughter was almost fifteen

---

[3] Because the defendant did not object to the admission of the DNA test establishing his paternity in the manner that statutorily is required, the trial court admitted it into evidence without requiring foundational evidence as to the test's authenticity or accuracy. See General Statutes § 46b-168 (a).

years old. A trial to the court was held on July 7, 2009, at which the plaintiff, Tournier and the defendant testified, and an expert witness provided an opinion as to the amount of the plaintiff's damages. Thereafter, the trial court, relying on Connecticut jurisprudence concerning issues of paternity and child support, concluded that although the defendant was the younger daughter's biological father, the plaintiff was equitably estopped from denying his paternity and financial responsibility for her and pursuing his claims for reimbursement.

The trial court reasoned that the plaintiff long had held himself out to be the younger daughter's father, that he had caused her to rely on him to meet her financial and emotional needs, and that revealing her true parentage, after she had been led to believe for her whole life that the plaintiff was her father, would be detrimental to her emotional well-being. According to the trial court, it "place[d] the utmost importance on the best interests of the child and, as such, it would be contrary to public policy to permit the plaintiff in this case to dispute his paternity of [her] at such a late date." The trial court also reviewed cases from other jurisdictions that rejected plaintiffs' claims for reimbursement of funds they had expended to raise children whom they had not fathered. The court gleaned from those cases a "public policy that the best interests of the child in receiving the support that he or she needs is more important than making a grown man financially whole for expenses that he incurred under a mistaken belief that he was a child's biological father, when doing so could potentially harm the child." According to the trial court, the cases stood for the proposition that "the best interests of the child trump the financial interests of a former putative father."[4] This appeal followed.

---

[4] The trial court also concluded that the plaintiff could not pursue an action for child support pursuant to either General Statutes § 46b-215 (a) (3) or § 46b-160 (a) (1) (A). The plaintiff, however, did not rely on either statute as authorization for his claims, which did not seek an order of support, but rather, sounded in nondisclosure, misrepresentation and unjust enrichment.

The plaintiff claims that the trial court improperly concluded that he was precluded by the doctrine of equitable estoppel and public policy from denying his paternity of the younger daughter and pursuing his claims for reimbursement. He argues that the court improperly focused on potential emotional harm to the younger daughter rather than whether she would suffer financial detriment, as required by the law governing claims of equitable estoppel. Moreover, the plaintiff contends, there was no evidence at trial to support the trial court's finding that the younger daughter would be harmed either emotionally or financially by an order requiring the defendant to reimburse him for the costs of her upbringing, or that the younger daughter and Tournier relied to their detriment on his voluntary assumption of parenthood. Finally, the plaintiff argues that the trial court improperly relied on a public policy rationale that prioritized the child's best interests when disallowing his action for damages because, given the facts of the present case, permitting reimbursement would not harm the younger daughter and disallowing it would not prevent such harm. We agree with the plaintiff that there was no evidence at trial of financial detriment to the younger daughter, which we have concluded to be necessary in equitable estoppel cases involving denials of paternity, and further, that the trial court improperly determined that his claims were barred by public policy concerns.[5]

We begin with the standard of review applicable to claims of equitable estoppel. The party claiming estoppel—here, the defendant—has the burden of proof. *W.*

---

[5] The plaintiff also argues that the trial court improperly relied on cases involving the contesting of paternity because in the present case, his lack of paternity is merely a predicate fact necessary for recovery of damages and establishing it is not the main object of his action. We conclude that similar policy concerns are implicated, nevertheless, and that the trial court appropriately looked to case law concerning paternity disputes.

v. *W.*, 248 Conn. 487, 495, 728 A.2d 1076 (1999). "Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there *is* evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The legal conclusions of the trial court will stand, however, only if they are legally and logically correct and are consistent with the facts of the case. . . . Accordingly, we will reverse the trial court's legal conclusions regarding estoppel only if they involve an erroneous application of the law. . . .

"Strong public policies have long formed the basis of the doctrine of equitable estoppel. The office of an equitable estoppel is to show what equity and good conscience require, under the particular circumstances of the case, irrespective of what might otherwise be the legal rights of the parties. . . . No one is ever estopped from asserting what would otherwise be his right, unless to allow its assertion would enable him to do a wrong. . . .

"There are two essential elements to an estoppel: the party [against whom it is asserted] must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 495–97; see also *Doe* v. *Doe*, 244 Conn. 403, 445, 710 A.2d 1297 (1998) ("estoppel requires proof of two facts: [1] misleading conduct by one party; and [2] detrimental

reliance thereon by the other party"), overruled in part on other grounds by *In re Joshua S.*, 260 Conn. 182, 202 n.17, 796 A.2d 1141 (2002).

In *W.* v. *W.*, supra, 248 Conn. 498, a case addressing a putative father's liability for child support following his divorce from the child's mother, we recognized that a party may be equitably estopped from denying his parentage and evading parental responsibilities "under appropriate circumstances . . . ." Consistent with the test for equitable estoppel generally, we explained that, "[i]n the context of parental responsibilities, the duty to support the child is placed fairly on the nonparental party, not solely because of his voluntary assumption of a parental role, but, also because of the misleading course of conduct that induced the child,[6] and the biological parent as the child's guardian, to rely detrimentally on the nonparental party's emotional and financial support of the child."[7] Id., 497–98.

---

[6] Estoppel cases involving parentage are anomalous in that the reliance interest at issue is not merely that of the party advocating that estoppel be imposed, typically a parent, but also that of a nonparty, namely, the child.

[7] Although our discussion examines whether the detrimental reliance element of equitable estoppel was proven here, because that is the element on which the plaintiff has chosen to focus, our review of the record reveals that the defendant similarly failed to establish that the plaintiff engaged in misrepresentation or a misleading course of conduct. It is well established that "the party against whom estoppel is claimed [here, the plaintiff] must do or say something calculated or intended to induce another party to believe that certain facts exist"; (internal quotation marks omitted) *In re Michaela Lee R.*, 253 Conn. 570, 604, 756 A.2d 214 (2000); when in reality the facts are otherwise. Importantly, however, the party subject to estoppel must have had actual or constructive knowledge of the true facts and, therefore, an awareness that the inconsistent representations he or she made were false. See 28 Am. Jur. 2d 511–12, Estoppel and Waiver § 44 (2011). Thus, in a case involving the denial of paternity, for equitable estoppel to apply, the putative father must have induced detrimental reliance by his words or conduct implying his paternity *while he knew or should have known* that he was not, in fact, the child's biological father. *Mougey* v. *Salzwedel*, 401 N.W.2d 509, 512–13 (N.D. 1987). Conversely, when the putative father himself has been deceived as to the child's paternity, he is not estopped by equity from refuting paternity once he discovers the truth. See *Dews* v. *Dews*, 632 A.2d 1160, 1168 (D.C. 1993); *Clevinger* v. *Clevinger*, 189 Cal. App. 2d 658, 673, 11 Cal. Rptr. 707 (1961).

In delineating the contours of equitable estoppel doctrine in this context, we examined competing approaches from other jurisdictions. We observed that some jurisdictions permit estoppel when the detrimental reliance of the child or the mother on the putative father's conduct in assuming the role of parent causes harm that is *either* financial *or* emotional in nature. See, e.g., *Clevinger* v. *Clevinger*, 189 Cal. App. 2d 658, 671–72, 11 Cal. Rptr. 707 (1961). In the former instance, the mother, in reliance on the putative father's assurances that he will support the child, declines to identify the child's biological father, establish his paternity and hold him responsible for the costs of the child's upbringing. Id., 671. In the latter instance, the child is encouraged to develop an affectionate and loving relationship with the putative father and to hold himself or herself out to the community as the putative father's child, and is later threatened with having that status abruptly revoked. Id., 671–72.

In the majority of jurisdictions, however, potential emotional harm alone provides insufficient grounds for imposing estoppel, and an additional showing of finan-

In the present case, there was no evidence that the plaintiff, prior to securing DNA testing, knew or should have known that he was not the younger daughter's father. The plaintiff testified that, at most, he had suspicions, which grew over time and were not based on any one fact. No other party testified to the contrary. Our common law long has contained a rebuttable presumption that a child born to a married couple is the offspring of that couple. See *Weidenbacher* v. *Duclos*, 234 Conn. 51, 69, 661 A.2d 988 (1995). In the absence of strong indications suggesting otherwise, the plaintiff reasonably presumed the same and was under no duty to act on his suspicions. *Mougey* v. *Salzwedel*, supra, 401 N.W.2d 513. Those suspicions, standing alone, do not constitute the type of actual or constructive knowledge necessary to invoke estoppel. See *NPA* v. *WBA*, 8 Va. App. 246, 253, 380 S.E.2d 178 (1989) (putative father not estopped from denying paternity where he assumed paternal role "under the mistaken belief that he was the child's natural father"; his "question or doubt as to his paternity at the child's birth does not establish an intent to falsely represent himself to the child as the child's natural father").

cial harm is required. See, e.g., *Miller* v. *Miller*, 97 N.J. 154, 168, 478 A.2d 351 (1984). Thus, the party seeking to invoke estoppel must show that, if the putative father is permitted to contest his paternity, the child "will suffer *future* financial detriment as a result of the [putative father's] past active interference with the financial support by the child's natural parent. . . . It is imperative for the [putative father] to have taken positive steps of interference with the natural parent's support obligations . . . ." (Citation omitted; emphasis in original.) *W.* v. *W.*, supra, 248 Conn. 502. "Future economic detriment is established, for instance, whenever a custodial natural parent . . . (1) does not know the whereabouts of the natural parent; (2) cannot locate the other natural parent; or (3) cannot secure jurisdiction over the natural parent for valid legal reasons, *and* . . . the natural parent's unavailability is due to the actions of the [putative father] . . . ." (Emphasis in original; internal quotation marks omitted.) Id.

Upon concluding that requiring a showing of financial detriment was the better approach to equitable estoppel claims concerning parentage and child support, we adopted it as the law in Connecticut. Id., 502. We reasoned that permitting estoppel when there was the potential for emotional detriment alone would create policy difficulties by discouraging the bonding of children and stepparents. Id., 503. We recognized further that the emotional harm to children that can result from a repudiation of paternity, "while very real, cannot necessarily be prevented by equitable estoppel, which is naturally confined to a party's legal obligations." Id. We noted, "[f]or example, [that] although a court can estop a party from legally denying paternity, and, therefore, require him to support a child financially, it cannot prevent a party from telling that child that he is not the child's biological father or from ceasing to emotionally support the child." Id., 503 n.16. Additionally, "a rule

requiring only emotional detriment could be very difficult for courts to apply. Hence, while emotional detriment should be a factor, it should not be the sole basis upon which to determine whether to apply the equitable estoppel doctrine." Id., 503.[8]

Applying the foregoing rule in *W.* v. *W.*, supra, 248 Conn. 505, and concluding that the requisite financial detriment had been proven, we upheld the trial court's determinations that the defendant in a dissolution action was estopped from denying his paternity of a child whom he had not fathered and that he was required to pay child support. In that case, the mother of the child had become pregnant while the parties were dating but not married, and the defendant was aware that he might not be the child's father. Id., 490. When the mother applied for public assistance, naming her former boyfriend as the father, the defendant destroyed the application documents and persuaded the mother not to obtain blood tests to establish the child's paternity. Id. Consequently, the mother did not seek public assistance or child support from the former boyfriend. Id.

The parties subsequently married, but the mother filed for divorce when the child was approximately ten years old. Although a paternity test ordered during the dissolution proceedings confirmed that the defendant was not the child's father, the trial court held that he was estopped from denying paternity and required him to pay child support. Id., 491–92. The court found that, at the time of the hearing, the whereabouts and financial wherewithal of the biological father were unknown, and the mother's current ability to obtain child support from him was uncertain. Id., 492. In light of the foregoing facts, we concluded that the trial court properly had

---

[8] Moreover, in this age of advanced medical science, it may be in the best interest of a child to know, in fact, the identity of his or her parents.

found that the defendant was estopped from denying paternity because "[h]is actions [had] frustrated the creation of the child's right to any financial support from her natural father." Id., 505.

Our review of the record in the present case reveals circumstances that are diametrically opposed to those in *W. v. W,* supra, 248 Conn. 489–92, and convinces us that, unlike the mother in that case, the defendant in the present case failed to sustain his burden of proving that the plaintiff should be estopped from denying his parental responsibilities. To begin, nothing in the record shows that the plaintiff frustrated Tournier's efforts to establish the younger daughter's true parentage, or to pursue child support payments from the defendant. To the contrary, the evidence showed that the defendant's whereabouts were well known throughout the younger daughter's upbringing, in that he regularly attended her activities and worked with Tournier, and his participation in the present case makes clear that his whereabouts remain well known. There are no indications that Tournier sought to determine conclusively the younger daughter's paternity or that the plaintiff dissuaded her from doing so. Furthermore, at the dissolution proceedings, Tournier testified that she believed the defendant was the younger daughter's father, that he had provided her support and that he would continue to do so. On that basis, the dissolution decree did not list the younger daughter as issue of the marriage and did not require the plaintiff to provide future support for her. Finally, nothing in the record suggests that the passage of time has hampered the defendant's ability to support the younger daughter, or that requiring the defendant to reimburse the plaintiff would have a negative impact on his continued ability to do so.

In sum, the record is devoid of any evidence that the plaintiff's actions in supporting the younger daughter during the marriage caused her or Tournier to rely on

him to their financial detriment. In light of this lack of evidentiary support, we conclude that the trial court's finding that the plaintiff was equitably estopped from denying his paternity and seeking reimbursement from the defendant was clearly erroneous. See *K.A.T.* v. *C.A.B.*, 645 A.2d 570, 573 (D.C. 1994) (child's emotional dependency alone insufficient to invoke estoppel without showing that natural father could not be located or otherwise was unavailable to fulfill legal support obligation); *Knill* v. *Knill*, 306 Md. 527, 537, 510 A.2d 546 (1986) (putative father not equitably estopped from contesting support order when evidence showed that biological father was at all times available for service of process and financially able to support child, and there was no evidence that mother had attempted to secure support from biological father or that putative father discouraged her from doing so); *Weise* v. *Weise*, 699 P.2d 700, 702–703 (Utah 1985) (putative father not equitably estopped from denying paternity by permitting his name to be put on child's birth certificate and assuming parental role when there was no evidence that mother had sought child support from biological father, her first husband).

We disagree further with the trial court's reasoning that public policy, namely, the elevation of a child's best interests over the interest of a putative father in being made financially whole, requires that the plaintiff be precluded from pursuing his claims, particularly on the facts of the present case. As we have explained, there was no evidence at trial to suggest that permitting the plaintiff to seek reimbursement from the defendant will leave the younger daughter without financial support. Accordingly, if we were to sustain the trial court's judgment on its public policy rationale—that preventing potential emotional harm to the younger daughter necessarily outweighs the plaintiff's interest in being made financially whole—we would be sanctioning an end run

around the requirement of *W.* v. *W.*, supra, 248 Conn. 502, that a showing of financial detriment, and not merely potential emotional detriment, is a necessary predicate for estopping a party from denying parental responsibility.

In addition, given what already has transpired within this family, we question whether allowing the plaintiff's action will harm the younger daughter emotionally, or whether disallowing it will protect her. Cf. *Weidenbacher* v. *Duclos*, 234 Conn. 51, 76–77, 661 A.2d 988 (1995) (adopting fact specific analysis, which considers interests of child born to married couple, child's existing family and alleged biological father, to determine whether alleged biological father should be permitted to contest child's paternity and rebut presumption of legitimacy). We are constrained to recognize that the plaintiff and Tournier, in the course of uncontested dissolution proceedings in 2007, already have stated in public documents that the defendant, and not the plaintiff, is the younger daughter's father, and further, that at no point in the present proceedings did either party seek to have any portion of the case record sealed. The disclosure of the younger daughter's true father, therefore, is not really at issue.[9] Even were this not the case, preventing the plaintiff from pursuing reimbursement from the defendant cannot ensure that the younger daughter will not eventually learn the circumstances of her birth if the knowledgeable parties are inclined to tell her, nor can it force the plaintiff to continue to support her emotionally. See *W.* v. *W.*, supra,

---

[9] We acknowledge that the plaintiff's refutation of his paternity necessarily identifies the younger daughter as a child born to unmarried parents, i.e., one who is "illegitimate," and that allowing this action in a sense reinforces that. For some time now, however, society has "recognize[d] that discrimination against illegitimate children is not justified. . . . The social stigma of being branded illegitimate, if indeed it remains at all, no longer carries the same sting that it once did." (Citation omitted; internal quotation marks omitted.) *Weidenbacher* v. *Duclos*, supra, 234 Conn. 70.

248 Conn. 503 n.16. In light of these circumstances, denying the plaintiff a right to seek reimbursement in order to protect the younger daughter from emotional harm likely would be an exercise in futility.

In sum, the trial court improperly found that the plaintiff was equitably estopped from pursuing his claims of misrepresentation, nondisclosure and unjust enrichment because there was insufficient evidence of financial harm, which is required to establish the element of detrimental reliance in a case involving a denial of paternity.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.